Our next case is In Re Ceccarelli. This case is an appeal from a decision by the Board of Patent Appeals and Interferences. This case is an appeal from a decision by the Board of Patent Appeals and Interferences. This case is an appeal from a decision by the Board of Patent Appeals and Interferences. and came back later and offered to deliver instead the different invention. So then it was clear what they had offered for sale was absolutely not the later patented invention, whereas here we have an offer to sell something and the invoice itself says what side pole legs or side leg poles or whatever it is, and by the testimony of the inventor himself there was no other device that he was working on or developing, but this one that would have fulfilled that invoice. I do understand that it seems that the facts are a little different in Spartan, however the real question is conception because there certainly cannot be an offer for sale of something that the inventor had not conceived of at the time. And he offered to sell something with these side pole legs. So what would this be? I mean it was even accepted? I mean there's actually a consummated sale here. If he didn't ultimately deliver what would happen? Would they have a breach of contract suit against him? No, there was an invoice and it was an itemized list of parts. The inventor has said in his declaration that he hoped to deliver something under this contract, but he had not conceived of what that was going to be. Can you look at his declaration and give me from this declaration, which I guess is at page A96, A97 and so forth, there is some ambiguity in it, but I'm wondering if you could guide me through it to give me some understanding as to what he was doing, what he was selling there. I don't believe what the inventor was doing was asking Stocksburg to loan him, well sell him a bed truck. If you look on page 2 of that declaration, A97, he says the first version was built and mounted on a truck chassis Exhibit 2 attached is an invoice that was prepared in April 2002 for a truck to be completed in late May 2002. Right, so they were hoping to complete a truck in late May. It says nothing about the fact that... Late May gets him in. The invoice is of course before that. It's in April. And at that time he hadn't conceived exactly of what he was going to deliver. He had not conceived of the truck that was going to be completed in late May. And that invoice is just an itemized list of parts. While it does reference side pull legs, during the prosecution the inventor explained that those side pull legs and the IDS, that they were actually Zackliff legs that were only designed to be used at the rear of a recovery vehicle. They were not designed to be used at the side. And it was the inventor who in his second declaration explained that he didn't know how he was going to use those side pull legs at the time of the invoice. He goes on to say the invoice makes no description of what was meant by side pull legs. I intended that the development and experimental testing would deliver a truck in May of 2002. Is that right? Correct. And I still think that under Spartan to actually put the claimed invention as the subject of an offer for sale, there needs to be conception. And when you read through both of the inventor declarations and the IDS that explains what those side pull legs in the invoice were, that the inventor clearly had not conceived of the claimed invention at the time of the invoice. Do you agree that it was reduced to practice prior to May 15th of 2002? Yes. When? I believe May 13th, two days before the critical date. And they were just painting after that, right? Correct. From 13th and 14th. But even under Spartan, I don't think that a later reduction to practice would ratify that offer because there was no conception. So tell me, what would be required? Because here we have an offer to sell. We have a reduction to practice prior to the critical date. And this is unquestionably the invention that will be used to satisfy the offer for sale. And all of this is prior to the critical date. So tell me, what step is missing prior to the critical date that can create an offer to sell here or sale? Under Spartan, I think what's missing is conception at the time of the invoice because the parties couldn't agree to sell something. I understand what you're arguing, but here's why it doesn't actually make sense to me in light of the policy. The on-sale bar prevents early commercialization efforts, right? So the rule that you're proposing results in this. I could then offer to sell you something. And so long as I haven't conceived of it at the time I offer it, you know, I know I'm going to be able to work it out at some point. I haven't conceived of it. I could offer to sell you $1,000, her $1,000, another $1,000. I'll just collect offers from everybody. I can even reduce them to practice. I can have them all ready for delivery, and then I'll wait until the day after the critical date and deliver them all. It doesn't make sense. That would be really contrary to the prevention of the commercialization efforts. I understand your point, but I also think that under FAFSA it says that this court wants to be consistent with contract law, that it isn't very consistent under contract law to have an offer for sale and acceptance of some vague concept. What if it was delivered? What if he, on May 13th it was done, reduced to practice, what if he actually delivered it on that day and said, here you go, here's the truck pursuant to your invoice? I still don't think. Then we have actually an offer for sale, a completed sale, all that has taken place before the critical date, and that's not going to be a bar? I suppose if there was a new offer acceptance and reduction to practice that potentially. But I think that still the issue here is when the offer was made, there wasn't conception. It was reduced to practice on May 13th, but it wasn't delivered until well after. But there was a detailed listing of parts in the invoice. Isn't that a conception? I mean that's just not a collection of nuts and bolts. It's specific items which had to have been for that purpose. Isn't that a conception of the purpose for which these parts were intended? I think that conception needs to be a little more definitive and permanent and complete and operative, and that really was just a list of parts, and the inventor did say in his declaration that he hadn't exactly developed the work yet. You haven't mentioned the word experimental. Was that issue waived? In honesty, we did not raise it in our opening brief, so while we did respond to it in our reply brief, it wasn't raised in our original brief. So it is waived? Yes. But I do think from the declarations you can tell that the dealings were experimental. In other words, the arguments didn't reflect all the facts. Well, I think that the main experimental or commercial here, there just was no offer for sale of the patent and invention because it had not been conceived at that time. And I do think that the overwhelming evidence in the record points that there was no conception. The invoice says nothing about the claim of invention. Instead, the inventor explained that it was for a truck to be completed in late May. It's, as I said, merely a list of parts, and the side pole legs were explained in the IDS as only being designed for use on the rear of the vehicle. And the inventor's first declaration says nothing about conception timing. It just says that he built beginning in April 2002. In the second declaration, he explicitly states there was no conception and further extrapolates that the building of the device did not even begin until the last week in April. The other issue before the court is that while the PTO takes a position that the examiner's rejections were based on the on-sale bar, this is not what the examiner said, rather he based the objections on an IWS web page as displaying claims 1 and 17. But all of the evidence in the record shows that this web page did not exist until June 6, 2002. So 3, 4, and 16 are separately patentable as a matter of law because there's no evidence that the side polar of claims 1 and 17 were known or used prior to the critical date. Do you want to save your rebuttal time? Yes, thank you, Your Honor. Thank you, Ms. Drexler. Ms. Sullivan? Thank you, Your Honor. May it please the Court? I'd like to begin by addressing applicants' argument that the rejection was over the web page, per se, and not the on-sale bar. If you read the whole of the Board's decision, it's clear that the rejection is for on-sale bar. At 8-4 of the record, the Board identified the issue before it as whether or not the examiner erred in finding that the invention called for and the claims was on sale. Then they went through the two FAFT prompts, and at 8-15 they concluded that both FAFT prompts applied. If the rejection was merely over the web page itself, they wouldn't have needed to have gone through the FAFT prompts. But was there a conception before the critical date? Yes, the Board found that there was conception before the critical date. On what basis? Pardon me? On what basis did they find that there was an enabled invention that could be sold? Well, they found conception based on Mr. Ceccarelli's admission in his first declaration that the invoice represented a sell-to-claim invention. And under Spartan, we know that you can't sell a device that you haven't conceived. And the fact that he sold it suggests, or the Board made a reasonable conclusion from the fact that he sold it, that he must have conceived it. Is there anything in the record that shows us that he had enabled something that he could sell? Enablement is part of the reduction, I'm sorry, part of the reduction of practice, part of the ready-for-patenting prompt. It's the ready-for-patenting prompt, yes. Right. So what do we have here that shows that he had something ready for patenting before May 15, 2002? The Board relied on applicants' admission in their appeal brief that they had released. Where specifically did he make the admission? That is at 8282, where applicants state that the Tuck Tuck was not conceived until weeks later and was not reduced to practice until the evening before it was presented to the public for the first time on May 15. So he's acknowledging that he reduced it to practice at least on May 14. 282, excuse me, and help me again. That is in the second paragraph, the last sentence of the second paragraph. Thank you. So this is the admission that it was reduced to practice prior to the critical date because it was at least as of the evening before. Yes, and under this court's case law, for instance, robotic, it is possible to have an offer for sale once you've conceived and then have a later, and then later satisfy the ready-for-patenting prompt. But in robotics, there was conception at the time of the offer for sale. And that's the hurdle you have here because their argument is there was no conception. He says that it was not conceived until weeks later. But the Board found that he had conceived as of the sale date. And they relied not only on his first declaration, but they also relied on the invoice itself. And this is at 814, 815. But he's saying very clearly that he hadn't conceived of it and was not reduced to practice until later. So I need some evidence that shows it was conceived before the – at the time of the offer. I agree that that's what he says in his first declaration. But that's not what he says – I'm sorry, in his second declaration, he says I hadn't conceived. But that's not what he says in his first declaration. Can you show me that? In his first declaration, he says that he entered into this agreement to sell the claimed invention. And the way you get to that conclusion is you have to read the whole of the declaration. This is the one at 896? Yes. Yes, I read that a couple of times. And I find myself still searching for that evidence that he really had an invention when he sold it. An enabled invention, one that was ready for patenting. Well, at the time that he – our position is not at the time that he sold it, it was enabled or ready for patenting. Our position is that it became ready for patenting prior to the critical date. And it's fine that it became ready for patenting after the actual offer for sale under the robotic case. I'm back to where Judge Moore was a moment ago. Had he conceived of it? Yes. The Board found that he had conceived of the claimed invention. Where is that evidence? Okay. They rely on his first declaration. Where does he say that? He doesn't come out and say, I had conceived of the claimed invention. The Board made the reasonable conclusion from him saying that he had sold the claimed invention. The fact that he sold it means that he must have had conceived of it at the time. Of course, in his declaration he constantly talks about experimental testing. Correct. And I believe that that supports our conclusion that he had conceived of it, because the experimental use doctrine by its nature serves to negate a sale of the claimed invention. There would be no reason to argue that the sale was for commercial use if he hadn't sold it in the first place. No, no, no. The experimental use means it was not sold. It negates the entire thing. It's not an exception. It's a negation. It completely negates the points of the sale. Yes. I believe under experimental use there's a sale, but the sale is not primarily for commercial purposes. The sale is for experimental purposes. There's still a sale. It just negates that the on-sell bar applies. So there is an experimental use here, and doesn't that eliminate the invoice as prior art? Well, the board found that the sale was commercial in nature rather than experimental in nature, and they relied on the invoice itself. That's the only objective evidence here. But he always says it's to be completed later. Yes. I think that the fact that it's to be completed later does not negate the fact that there was an offer for sale on April 18th. I mean, even in fact, when he sold the socket, the socket did not exist at that time. He says at least three times, to be completed in late May. Equipped and developed would be delivered in late May. And under this Court's case law, the fact there doesn't even have to be delivery in order for there to be an on-sell bar. I understand, but we're struggling with when he conceived of the invention. Well, the problem here is that applicants' entire argument rests on I didn't conceive. And they only have evidence, that subjective evidence, of one inventor. There are three inventors here, and we don't have any evidence from the other two inventors of what they conceived of and when they conceived of it. Which way does that cut? It doesn't seem to help you or hurt you. Well, I think that the problem is the Patent Office only has the evidence that's in front of it. The Patent Office can't go out and do a deposition. It can't begin discovery and try to determine when the applicant or try to determine by clear and convincing evidence when the applicant conceived. The applicants are the ones that are in the unique position to provide all this information. And if their argument is, I didn't conceive, they should come forward with some evidence of if they didn't conceive on May 18th, when did they conceive? What about the other two inventors? If their argument is, well, the PTO has the burden of proof. This is a rejection context. And so the PTO has the burden of proving that there's an on-sale bar. Doesn't that include the burden of proving that what was offered for sale was the conceived of invention? Well, I think the Patent Office did that. Yes, they have the burden of proving by preponderance of evidence. But what is the evidence here? The evidence is there was an invoice. In the first declaration, he said, I entered into an agreement to build that tow truck. Here's the invoice memorializing that agreement. That's what I built. That's what I delivered. And that's what satisfied my obligations under the invoice. And if you take all that evidence together, I think the board made a reasonable conclusion that what he sold on April 18th was the claimed invention. And there's no evidence to the contrary. I understand the PTO's argument is that there's substantial evidence to support the idea that it was conceived at the time of sale. That's correct, right? That's your argument. But let me ask you, is that your only argument? Or are you also saying that even if it wasn't conceived, suppose you have a situation where there's no conception at the time of the offer, but there's conception a day later, reduction of practice the day after that, and delivery the third day, and all of this is a month before the critical date. Wouldn't that create an on-sale bar? So there's no conception at the time of the offer, but the contract was fulfilled. Wouldn't that create an on-sale bar? I think Spartan says that you have to have conception at the time that you sold it. I think there might be some way around Spartan. There might be some contract mechanism under the UCC where you could have some sort of open offer, and once you satisfy that offer, maybe the on-sale bar would arise then. But the board did not rely on anything such as that, so we didn't brief anything like that. The board found specifically that applicants had conceived at least by April 18th. But I guess I'm sort of surprised because I would think that if you had an offer for sale, then a day later conception, the day after that reduction of practice, and then it was delivered, and then a month later is the critical date that you'd be up here jumping up and down saying, well, of course that amounts to an on-sale bar, and Spartan can't possibly be precedent to the contrary. Well, I think that I can't substitute a different argument or a different rationale from the one that the board used. The board found that it was conceived as of April 18th. I'd like to make one point about the invoice. Applicants argue that it's a mere recitation of parts, and it doesn't serve to provide evidence that the claimed invention was sold via the invoice. And this Court's precedents, such as RCA Corporation and Scale Tech, state that it's not necessary for the invoice itself to list the claimed elements, that you can rely on other evidence to make a finding that the invoice was for the claimed invention, such as the testimony of the parties to the invoice. And here we have Mr. Ceccarelli's testimony that the invoice was for the claimed invention. As to the remaining issues, I will stand on my brief, and if there are no further questions, I will close. Okay. Thank you, Ms. Selbert. Thank you. Ms. Drexler, you have four and a half minutes. I think it's clear from the PTO's position that they can't point to any concrete evidence in the record of conception as of April 18th, 2002. And also, just unless there are any further questions. Thank you, Ms. Drexler.